Steven D. Moore, SBN 290875
smoore@kilpatricktownsend.com
KILPATRICK, TOWNSEND & STOCKTON LLP
Eighth Floor, Two Embarcadero Center
San Francisco, CA, 94111
Telephone: (415) 273-4741
Facsimile:  (415) 651-8510

Wab P. Kadaba (*pro hac vice*)
wkadaba@kilpatricktownsend.com
Vanessa M. Blake (*pro hac vice*)
vblake@kilpatricktownsend.com
Rodney R. Miller (*pro hac vice*)
rmiller@kilpatricktownsend.com
KILPATRICK, TOWNSEND & STOCKTON LLP
Suite 2800
Atlanta, GA, 30309
Telephone: (404) 532-6959
Facsimile: (404) 541-3258

Attorneys for CrowdStar International Limited,
CrowdStar Inc., and CrowdStar Network, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GAMETEK LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>CROWDSTAR INTERNATIONAL LTD, CROWDSTAR, INC., and CROWDSTAR NETWORK, LLC,<br><br>            Defendants. | Case No. 3:13-CV-03493-RS<br><br>**DEFENDANT CROWDSTAR'S MOTION FOR ATTORNEYS' FEES**<br><br>Hearing Date: August 7, 2014<br><br>Hearing Time: 1:30 pm<br><br>Courtroom: 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA<br><br>Name of Judge: Hon. Richard Seeborg |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 7, 2014 at 1:30 pm in the courtroom of the Honorable Richard Seeborg at Courtroom 3, 17th Floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA, Defendants CrowdStar International LTD, CrowdStar, Inc., and CrowdStar Network, LLC (collectively, "CrowdStar") will and do hereby move the Court for an award of attorneys' fees, including nontaxable expenses, and interest, of $434,326.92.[1]

This motion is made pursuant to 35 U.S.C. § 285 because this case is "exceptional" as defined under the statute. Gametek LLC ("GT") asserted a patent that this Court held to be invalid in one of the "rare" instances of dismissal at the pleading stage for lack of patentable subject matter. Not only did GT's case have no strength, GT litigated this case in an unreasonable manner in an effort to drive up litigation costs for Defendants and force settlement on a low-quality (invalid) patent. For example, GT (1) committed misjoinder by including almost two dozen defendants in a single lawsuit contrary to statute, *see Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Dec. 7, 2012) (Dkt No. 167) (granting Defendants' motion to dismiss under 25 U.S.C. § 299); (2) re-filed suit against all Defendants again in the same venue, thus requiring Defendants to file multiple (successful) motions to transfer, *see, e.g.*, *Gametek LLC v. Zynga Inc.*, No. 12-2933 (S.D. Cal. June 3, 2013) (Dkt No. 42-1) (granting Defendants' motion to transfer venue to the Northern District of California), *Gametek LLC v. Electronic Arts*, No. 12-2927 (S.D. Cal. July 23, 2013) (Dkt No. 59) (same), *Gametek LLC v. Funzio, Inc. et al.*, No. 12-2928 (S.D. Cal. June 28, 2013) (Dkt No. 42) (same), *Gametek LLC v. CrowdStar International Limited et al.*, No. 12-2931 (S.D. Cal. July 25, 2013) (Dkt No. 32) (same); and (3) repeatedly demanded unreasonable discovery. This motion is based on this Notice of Motion and Motion for Attorneys' Fees, the attached Memorandum of Points and Authorities, the Declarations of Steven Moore and Jason Lo and exhibits thereto, and any other evidence or argument presented by counsel to the Court. Funzio, Inc. ("Funzio"), Zynga Inc. ("Zynga"), and Electronic

---

[1] *See* Declaration of Steven Moore in Support of CrowdStar's Motion for Attorneys' Fees ("Steven Moore Declaration"), at 4; Declaration of Jason Lo in Support of CrowdStar's Motion for Attorneys' Fees ("Jason Lo Declaration"), at 4.

Arts Inc. ("Electronic Arts") (collectively, Defendants) are filing similar motions seeking attorneys' fees. CrowdStar hereby requests to join in Defendants' motions seeking an award of attorneys' fees. A proposed order is included.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................................... 1

II. STATEMENT OF THE ISSUE TO BE DECIDED............................................................... 2

III. STATEMENT OF THE JUDGMENT, STATUTE ENTITLING CROWDSTAR TO THE AWARD, AND THE AMOUNT SOUGHT ................................................................. 3

IV. BACKGROUND FACTS ........................................................................................................ 3

V. LEGAL STANDARD ............................................................................................................... 5

VI. ARGUMENT............................................................................................................................. 8

    1. CrowdStar is the Prevailing Party ................................................................................. 8

    2. This is an Exceptional Case under 35 U.S.C. § 285..................................................... 8

        a. GT's assertion of the validity of the '445 patent lacked substantive strength, as shown by this Court invalidating the patent at the pleading stage, a rare occurrence that satisfies as an exceptional case ................................................................................................................................. 9

        b. GT litigated this case in an unreasonable and oppressive manner, providing another ground for an exceptional case finding............................. 10

            1) GT unreasonably violated the joinder statute, and the Court granted CrowdStar's motion to dismiss for misjoinder...................... 10

            2) The same day the Court dismissed the misjoined case, GT files suit in the same venue, and the Court grants CrowdStar's motion to transfer venue................................................. 11

            3) In almost 50 different instances, GT threatens motions to compel and sanctions for alleged discovery violations despite the lack of any discovery deadline ........................................ 12

VII. CONCLUSION......................................................................................................................... 14

TABLE OF AUTHORITIES

Page

**Cases**

*Alice Corporation Pty. v. CLS Bank International*,
    No. 13-298 (June 19, 2014) ...................................................................................................... 8

*Lumen View Technology v. Findthebest.com*,
    No. 13-3599, 2014 WL 2440867 (May 30, 2014) ................................................................... 7

*Network Protection Services v. Fortinet*,
    No. 12-1106, 2013 WL 4479336 (N.D.Cal. 2013) .................................................................. 7

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
    572 U.S. __, No. 12-1184 (Apr. 29, 2014) ...................................................................... 1, 6, 9

*Ultramercial, Inc. v. Hulu*,
    722 F.3d 1335 (Fed. Cir. 2013) ....................................................................................... 1, 5, 8

**Statutes**

25 U.S.C. §299 ............................................................................................................................. 10

35 U.S.C. §101 ........................................................................................................................... 5, 7

**Other Authorities**

American Intellectual Property Law Association, *Report of the Economic Survey 2013* ................... 16

Federal Circuit Chief Judge Randall R. Rader, Colleen V. Chien, and David Hricik,
    *Make Patent Trolls Pay in Court*, The New York Times (June 4, 2013) ............................ 3, 7, 15

**Rules**

Fed. R. Civ. P. 11 ........................................................................................................................... 6

Fed. R. Civ. P. 21 ..................................................................................................................... 4, 10

Fed. R. Civ. P. 54(d)(2)(B) ............................................................................................................ 3

## I.     INTRODUCTION

On April 25, 2014, this Court granted judgment on the pleadings in favor of CrowdStar because GT Gaming f/k/a Gametek LLC's asserted patent is invalid for lack of patentable subject matter. As the prevailing party, CrowdStar seeks attorneys' fees allowed by the patent statute for an "exceptional case." *See* 35 U.S.C. § 285.

Recently, the Supreme Court removed the constraints the Federal Circuit had imposed on District Courts' discretion to award § 285 attorneys' fees and explained that a wider universe of scenarios would fall under the statute's definition of "exceptional." In particular, the Supreme Court identified two types of cases that would each satisfy the § 285 standard: (1) "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case)" or (2) "the unreasonable manner in which the case was litigated." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (Apr. 29, 2014). The Supreme Court held that "exceptional" in the statute has its ordinary meaning: "rare." *Id.* Nothing else constrains District Courts from awarding fees under § 285. *Id.*

The standard is satisfied here for two independent reasons. ***First***, the lack of substantive strength of GT's assertion of Patent No. 7,076,445 is shown by this Court's Order invalidating the patent at the pleading stage for lack of patentable subject matter. Both this Court and the Federal Circuit have noted that such dismissals are warranted only in "rare" cases. *See Gametek LLC v. Zynga Inc.*, No. 13-2546, at *4 (N.D. Cal. Apr. 25, 2014) (Dkt. No. 82) (quoting *Ultramercial, Inc. v. Hulu*, 722 F.3d 1335 (Fed. Cir. 2013)). Further, as the Court recognized, GT provided "no meaningful alternative," "no substantive counter-argument," and "no explanation" on the §101 inquiry in response to CrowdStar's motion. *Id.* at *6, 7, 9, 10.

***Second***, this case is also exceptional because, in a thinly veiled attempt to force a nuisance settlement, GT's improper litigation demands drove up CrowdStar's costs in defending the litigation. GT is a non-practicing entity and subsidiary of the massive patent assertion entity Acacia. As evidenced by its litigation conduct, GT's business plan from the start was to purchase a low value (really, no value) patent at a cheap price, assert that patent against a slew of productive companies

spanning an entire industry, and drive up litigation costs to extract settlements individually lower than the cost of each defendant defending litigation but in the aggregate more than the cost to GT of purchasing the patent in the first place. And, the strategy worked. By the time the patent was ruled invalid, GT had already extracted individual settlements at well below the average cost of defense from 10 of the effectively 14 defendant companies it sued (excluding the four companies GT voluntarily dismissed) for an aggregate amount that far exceeds what it paid for the now-invalid patent.

GT's attempts to litigate irrespective of the merits of its case and to escalate litigation costs to CrowdStar were replete throughout this litigation: committing blatant misjoinder and re-filing its suit against the same defendants in the same inconvenient venue thus forcing each to move for transfer.

Another example of GT's improper litigation strategy is its unreasonable discovery requests to CrowdStar. For example, GT's counsel demanded depositions of CrowdStar witnesses on 75 Rule 30(b)(6) topics—many of which were not relevant—on multiple accused products on an expedited basis. There is simply no rational explanation for GT's discovery demands other than one last effort to force settlement discussions by threatening to impose on Defendants substantial litigation costs before the Court invalidates the patent. While egregious, GT's actions are not surprising, as GT's strategy has never been based on the strength of the '445 patent.

Because GT's actions throughout the litigation forced CrowdStar to incur unnecessary costs and attorneys' fees, CrowdStar seeks reimbursement in defending against a lawsuit that never should have been brought (as GT's assertion of validity of the '445 patent has no substantive strength) and was unnecessarily prolonged by GT's unreasonable litigation demands (which GT engaged in to drive up CrowdStar's litigation costs in hopes of forcing CrowdStar to settle rather than bear the cost of litigation). GT should be punished, not rewarded (as it currently stands with several settlement fees based on an invalid patent), for its abusive litigation tactics.

## II. STATEMENT OF THE ISSUE TO BE DECIDED

Pursuant to Civil L.R. 7-4, the issue to be decided is whether GT's actions in initiating this litigation to assert Patent No. 7,076,445 as well as the manner it litigated this case make this an

"exceptional case" under 35 U.S.C. § 285, thereby justifying an award of reasonable attorneys' fees to the prevailing party CrowdStar.

### III. STATEMENT OF THE JUDGMENT, STATUTE ENTITLING CROWDSTAR TO THE AWARD, AND THE AMOUNT SOUGHT

Pursuant to Fed. R. Civ. P. 54(d)(2)(B), the judgment and statute entitling CrowdStar to an award of attorneys' fees is this Court's April 25, 2014 Order Granting Motions For Judgment On The Pleadings (Dkt. No. 69) and Judgment (Dkt. No. 70) and 35 U.S.C. § 285.  CrowdStar seeks the amount identified in the attached Declarations of Steven Moore and Jason Lo.

### IV. BACKGROUND FACTS

GT is a subsidiary of Acacia, a large, publicly-traded, and well-known patent assertion entity. *See* Acacia Research Corporation:  About Us, http://acaciaresearch.com/about-us/ (last visited June 12, 2014).  Acacia claims to be the "industry leader in patent licensing" and touts its "deep legal and technology expertise" to "unlock financial value" in patents.  *See id.*

GT itself is a non-practicing entity, *see Gametek LLC v. Zynga Inc.*, No. 12-2933, at *5, 7 (S.D. Cal. June 3, 2013) (Dkt No. 42-1), meaning that it has never provided any products to market. *See* then-Chief Judge of the Federal Circuit Randall R. Rader, Colleen V. Chien, and David Hricik, Op-Ed., *Make Patent Trolls Pay in Court*, N.Y. Times, June 4, 2013, at A5 ("Their business plan is simple: trolls (intellectual-property lawyers use less evocative terms like 'non-practicing entities' and 'patent-assertion entities') make money by threatening companies with expensive lawsuits and then using that cudgel, rather than the merits of a case, to extract a financial settlement.") (2013 WLNR 13756999) (Exhibit 1).

All within a span of a few months, Acacia purchased the '445 patent, created GT, assigned the '445 patent to GT, then (through GT) asserted litigation based on the '445 patent.  *See* Agreement between Theados Corporation and Acacia Research Group (October 20, 2011) (Acacia purchasing the '445 patent) (GAMETEK001405 to GAMETEK001423) (Exhibit 2); Secretary of State Articles of Organization: Gametek LLC (Dec. 14, 2011) (GAMETEK002009 to GAMETEK002010) (Exhibit 3); Assignment and Assumption Agreement between Acacia Research Group and Gametek LLC

(Acacia assigning '445 patent to Gametek) (Dec. 19, 2011) (GAMETEK002066 to GAMETEK002068) (Exhibit 4). Specifically, Acacia and GT purchased the '445 patent for **[REDACTED]** and recorded the assignment in February 2012, roughly six years after the patent issued. *See* Agreement between Theados Corporation and Acacia Research Group LLC (GAMETEK001407) (Exhibit 2). To this day, GT's only asset is the '445 patent.

That same month, GT filed a single lawsuit against 21 competing mobile game developers, online game developers, and social media providers, including CrowdStar, in the Southern District of California, alleging infringement of the '445 patent. *Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Feb. 28, 2012) (Dkt. No. 1).

The Defendants, including CrowdStar, filed a motion to dismiss for improper joinder under 35 U.S.C. § 299. The Court *granted* Defendants' motion and dismissed the case. *Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Dec. 7, 2012) (Dkt. No. 167) (Order Granting Motion to Dismiss under 25 U.S.C. § 299 and Fed. R. Civ. P. 21).

The same day the parties received notice of the dismissal,[2] GT filed a second lawsuit, again in the Southern District, asserting the same '445 patent against CrowdStar. *Gametek LLC v. CrowdStar International Ltd,* No. 12-2931 (S.D. Cal. Dec. 10, 2012) (Dkt. No. 1). CrowdStar filed a motion to transfer venue to the Northern District. The Court *granted* CrowdStar motion. *Gametek LLC v. CrowdStar International Ltd,* No. 12-2931 (S.D. Cal. July 25, 2013) (Dkt. No. 32).

Shortly after the parties exchanged proposed claim constructions, CrowdStar filed a motion for judgment on the pleadings because the '445 patent was invalid under 35 U.S.C. § 101 for lack of patentable subject matter. At the April 24, 2014 hearing, this Court gave a tentative ruling in favor of granting CrowdStar's motion. The next day, this Court issued an Order granting CrowdStar's motion and entering judgment in favor of CrowdStar — ending the case. *See Gametek LLC v. CrowdStar International Ltd.*, No. 13-3493 (N.D. Cal. Apr. 25, 2014) (Dkt. No. 69).

---

[2] Though the Order is dated December 7 and the docket entry currently states the same, the Order was not entered until December 10 and the parties did not receive the ECF notice until that day. *See* Email from ECF to CrowdStar's counsel (Dec. 10, 2012 1:28 p.m. PT).

In granting CrowdStar's motion, the Court observed that "this appears to be the *rare* case in which the defendants have met their burden at the pleadings stage to show by clear and convincing evidence that the '445 patent claims an unpatentable abstract idea." *Id.* at *1-2 (emphasis added). This Court cited the Federal Circuit's holding that "it will be *rare* that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter." *Id.* at *4 (citing *Ultramercial*, 722 F.3d at 1338 (emphasis added)). This Court relied on the fact that, in response to CrowdStar's arguments, GT provided "no meaningful alternative," "no substantive counter-argument," and "no explanation" on the Supreme Court's guideposts in the § 101 inquiry. *Id.*

Prior to the Court's invalidation of the '445 patent, GT's litigation campaign against the game industry netted settlement agreements with ten defendants out of the fourteen sued. Of the five settlement agreements produced by GT to CrowdStar in this case, no defendant paid more than **[REDACTED]** —far less than a settlement amount reflecting a belief in the strength of a patent and far less than the average cost to defend a litigation—yet GT's litigation strategy in the aggregate has earned it **[REDACTED]** in settlement fees. *See* Backflip settlement agreement (GT408000368-000375) (Exhibit 5); Playforge settlement agreement (GT408000376-000386) (Exhibit 6); 6Waves settlement agreement (GT408000387-000396) (Exhibit 7); NHN settlement agreement (GT408000397-000407) (Exhibit 8); Gameview settlement agreement (GT408000586-000596) (Exhibit 9). As it stands now, Acacia's settlement fees far exceed the price that it paid for the '445 patent **[REDACTED]**. *See* Agreement between Theados Corporation and Acacia Research Group LLC (GAMETEK001407) (Exhibit 2).

## V.   LEGAL STANDARD

In patent suits, the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Until recently, the Federal Circuit had imposed heavy restrictions on what could constitute an exceptional case. But, in April of this year, in *Octane Fitness*, the Supreme Court changed the standard for what constitutes an "exceptional case" under § 285 by rejecting those restrictions. The Court held there is "one and only one constraint on district courts' discretion to award attorneys' fees in patent litigation: The power is reserved for 'exceptional'

cases." *Octane*, 134 S. Ct. at 1755-56. In other words, the "analysis begins and ends with the text of § 285." *Id.*

The Supreme Court construed "exceptional" in "accordance with its ordinary meaning": "***rare***." *Id.* (emphasis added). "In 1952, when Congress used the word in § 285 (and today, for that matter), exceptional meant uncommon, ***rare***, or not ordinary." *Id.* (emphasis added; quotation marks omitted). The Court explained an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

In explaining the new standard, the Supreme Court rejected the Federal Circuit's prior restrictions as "overly rigid." *Id.* For example, the Federal Circuit's requirement of "material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions" actually rose to the level of independently sanctionable conduct. *Id.* at 1754. But, as § 285 cannot be superfluous to other fee-shifting provisions, the Supreme Court held that § 285 must cover conduct that would *not* otherwise rise to independently sanctionable conduct such as under Rule 11 or the Courts' inherent power to deal with "willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 1758.

Another test the Supreme Court rejected as "too restrictive" is the Federal Circuit's two-part test requiring the litigation be *both* objectively baseless *and* brought in subjective bad faith. *Id.* at 1757. The Court stated § 285 could cover, for instance, scenarios with only one of those two parts: the scenario where the litigation is objectively baseless (but *not* brought in subjective bad faith) and the scenario where the litigation is (*not* objectively baseless but) brought in subjective bad faith. *Id.*

Last, the Supreme Court rejected the Federal Circuit's imposition of a "clear and convincing evidence" standard of proof for § 285. The statute only recites a "simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one." *Id.* at 1758.

The Supreme Court ruling in *Octane Fitness* is consistent with the view that § 285 is a tool to

6

correct the damage caused by non-practicing entities that plague the court system and productive businesses. As explained by the then-Chief Judge of the Federal Circuit, the "onslaught of litigation" brought by non-practicing entities has "slowed the development of new products, increased costs for businesses and consumers, and clogged our judicial system." *See* Hon. Rader et al., *supra*. And generally the judicial system provides a strategic advantage for such companies that do not make any products, because they need not fear a patent infringement counterclaim, need not be concerned with their employees being distracted from a core business of making products, and "when they lose a case, after all, they are typically out little more than their own court-filing fees." *Id.*

But, § 285 provides a remedy, as explained by the then-Chief Judge: "Section 285 of the Patent Act, as well as Rule 11 of the Federal Rules of Civil Procedure, give judges the authority they need to shift the cost burden of litigation abuse from the defendant to the troll." *Id.*; *see also Network Protection Services v. Fortinet*, No. 12-1106, 2013 WL 4479336, at *1 (N.D. Cal. 2013) (quoting same). By looking for signs "that a patent lawsuit was pursued primarily to take improper advantage of a defendant—that is, using the threat of litigation cost, rather than the merits of a claim, to bully a defendant into settling," judges have "the authority to stop it." *Id.* The Chief Judge ended with the following exhortation: "We urge them to do so." *Id.*

In one of the first decisions awarding § 285 fees following *Octane Fitness*, the S.D.N.Y. Court embraced its role to deter patent troll litigation and deemed such a case as the "prototypical exceptional case." *Lumen View Technology v. Findthebest.com*, No. 13-3599, 2014 WL 2440867, at *1, 7 (May 30, 2014). The plaintiff in *Lumen*, a "patent holding non practicing entity that acquires patents and instigates patent infringement lawsuits" and that "appears to be a shell company that is one of a number of related companies involved in litigating patent infringement suits," asserted a computer-implemented method patent. *Id.* The Court invalidated the patent under 35 U.S.C. § 101 as an abstract idea. *Id.* at *2.

The Court then granted the motion for attorneys' fees under § 285 because, among other things:

Lumen's motivation in this litigation was to extract a nuisance settlement from FTB

US2008 5759912 1

on the theory that FTB would rather pay an unjustified license fee than bear the costs of the threatened expensive litigation. Lumen never sought to enjoin FTB from the allegedly infringing conduct in its prayer for relief. Lumen's threats of 'full-scale litigation,' 'protracted discovery,' and a settlement demand escalator should FTB file responsive papers, were aimed at convincing FTB that a pay-off was the lesser injustice. [*Id.* at *6]

The S.D.N.Y. Court held *Octane Fitness* supported an exceptional case finding because of the importance of deterring such predatory suits: "Lumen's instigation of baseless litigation is not isolated to this instance but is instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits." *Id.* at *7. The Court cited as evidence the number of substantially similar lawsuits the plaintiff had filed within a short time frame, the boilerplate nature of the complaint, and the absence of reasonable pre-suit investigation. *Id.* "The need to advance considerations of deterrence of this type of litigation behavior is evident." *Id.*

## VI. ARGUMENT

### 1. CrowdStar is the Prevailing Party

This Court's April 25, 2014 Order Granting Motions For Judgment On The Pleadings (Dkt. No. 69) and Judgment (Dkt. No. 70) make CrowdStar the prevailing party in this case. GT recovered none of the relief sought in its complaint against CrowdStar. During the meet and confer for this motion, GT's counsel stated it does not dispute that CrowdStar is the prevailing party. Steven Moore Declaration, at 2.

### 2. This is an Exceptional Case under 35 U.S.C. § 285

This case meets the definition of "exceptional" under § 285. A judgment on the pleadings invalidating a patent based on lack of patentable subject matter is itself rare and justifies an exceptional case finding, particularly here where GT had no substantive response to CrowdStar's motion. In addition, GT has litigated in an unreasonable manner to coerce settlements irrespective of the merits of its case, confirming this case is not common.

Despite its patent being ruled invalid, GT and its parent company Acacia have nevertheless had a successful litigation campaign against the game industry. Based on the five settlement

agreements produced by GT in this case, GT has profited **[REDACTED]** more than it paid for the '445 patent. Without a § 285 ruling against it, GT (Acacia) is not the "prevailing party" only in legal terms, not financially, as it has reaped a handsome profit from its business strategy of burdening productive companies, like CrowdStar, with a cheap (and invalid) patent combined with unreasonable litigation demands.

Section 285 is the tool to stop such harmful behavior. CrowdStar merely seeks reimbursement for its attorney fees in defending against a lawsuit that should not have been brought at all and was unreasonably litigated by GT to extract an unwarranted settlement. The remedial purpose of § 285 is to compensate CrowdStar as the prevailing party for fees incurred.

### a. GT's assertion of the validity of the '445 patent lacked substantive strength, as shown by this Court invalidating the patent at the pleading stage, a rare occurrence that satisfies as an exceptional case

As the Federal Circuit recently held, invalidating a patent at the pleading stage for lack of patentable subject matter is a "*rare*" occurrence. *Ultramercial*, 722 F.3d at 1338 (emphasis added).

In granting CrowdStar's motion in that same scenario, this Court echoed that sentiment: "this appears to be the *rare* case in which the defendants have met their burden at the pleadings stage to show by clear and convincing evidence that the '445 patent claims an unpatentable abstract idea." *See Gametek LLC v. Zynga Inc.*, No. 13-2546, at *1, *4 (N.D. Cal. Apr. 25, 2014) (Dkt. No. 82) (citing *Ultramercial*, 722 F.3d at 1338) (emphasis added).[3]

Further, GT had two opportunities—in its opposition brief and at the hearing—to answer the fundamental § 101 inquiry: what meaningful limitations exist in the claims in addition to the abstract idea? This Court considered those arguments and rejected each one in its detailed Order. In doing so, this Court noted GT's lack of substantive responses to the § 101 analysis. *See id.* at *6, *7, *9, *10 (stating that GT provided "no meaningful alternative," "no substantive counter-argument," and

---

[3] The Supreme Court's unanimous decision in *Alice Corporation Pty. v. CLS Bank International*, No. 13-298 (June 19, 2014) recently confirmed that this Court's decision is correct.

9

CASE NO. 3:13-CV-03089-RS

"no explanation" on the § 101 inquiry).

In short, this is a "rare" case and, by definition, is exceptional under § 285.  *See Octane Fitness*, 134 S. Ct. at 1756 ("In 1952, when Congress used the word in § 285 (and today, for that matter), exceptional meant uncommon, *rare*, or not ordinary." (emphasis added)).

### b. GT litigated this case in an unreasonable and oppressive manner, providing another ground for an exceptional case finding

This case is "exceptional" under § 285 for another, independent reason: GT has litigated this action in an unreasonable and oppressive manner, as shown by CrowdStar's successful motion to dismiss for misjoinder in the original case, CrowdStar's successful motion to transfer venue, and CrowdStar's successful opposition to GT's motion to compel discovery.

#### 1) GT unreasonably violated the joinder statute, and the Court granted CrowdStar's motion to dismiss for misjoinder

The joinder statute for patent cases, 35 U.S.C. § 299, is straightforward: "accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit."  Yet, GT originally filed its lawsuit alleging the sole '445 patent against 21 competing mobile game developers, online game developers, and social media providers, and more than a dozen different accused products.

GT's stated basis for joining all Defendants in a single suit was Facebook's purported involvement in all of the accused products.  *See Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Feb. 28, 2012), at ¶17.  But that allegation had no basis in reality, as shown by (1) the lack of facts supporting it in the Complaint, *id.*, (2) GT's not filing an opposition to Facebook's motion to dismiss, *id.* at Dkt. No. 120 (GT Response to Facebook Motion to Dismiss), and (3) GT's dismissal of Facebook from the case, *id.* at Dkt. No. 119 (GT Notice of Voluntary Dismissal of Facebook). Moreover, Defendants explained to GT on multiple occasions that GT's suit improperly joined Defendants in contravention of the joinder statute, but GT chose to ignore the statute's requirements and press forward.  *See, e.g.*, *id.* at Dkt. No. 51 (Answer, at ¶17); Email from CrowdStar's counsel to

GT's counsel (Apr. 30, 2012, 3:00 p.m. PT) (Exhibit 10); Email from CrowdStar's counsel to GT's counsel (May 2, 2012, 11:23 a.m. PT) (Exhibit 11); Email from GT's counsel to CrowdStar's counsel (May 3, 2012, 8:12 a.m. PT) (Exhibit 12).[4]

As expected, the S.D. Cal. Court dismissed GT's case because of misjoinder, *Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Dec. 7, 2012), at Dkt. No. 167 (Order Granting Motion to Dismiss under 25 U.S.C. § 299 and Fed. R. Civ. P. 21), but not before CrowdStar, among other Defendants, was forced to incur unnecessary attorneys' fees and costs in researching and drafting a motion to dismiss.[5]

### 2) The same day the Court dismissed the misjoined case, GT files suit in the same venue, and the Court grants CrowdStar's motion to transfer venue

After having its case dismissed because of misjoinder, GT tried to get the same result by filing complaints against the same Defendants in the same venue (again, S.D. Cal.). Ignoring whether each Defendant (or even GT itself) actually had ties to the Southern District, GT forced each Defendant to move to transfer venue. Indeed, the Defendants were similarly situated with no meaningful connections to the Southern District and successfully moved to transfer venue.

Facts either publicly-available or known to GT showed that the Defendants did not have sufficient ties to the Southern District. For example, the Court relied on in granting CrowdStar's motion to transfer that neither GT, the prosecuting attorneys, nor the alleged inventor of the '445 patent reside in the Southern District—all facts within GT's knowledge when it chose to file suit in the Southern District. *Gametek LLC v. CrowdStar International Limited et al.*, No. 12-2931 (S.D. Cal. July 25, 2013) (Dkt No. 32). As to CrowdStar specifically, publicly-available facts (which GT had access to and either knew or should have known) show that CrowdStar's headquarters and only

---

[4] The law firm of Gibson, Dunn & Crutcher LLP was counsel for counsel for CrowdStar until October 1, 2013. On October 2, 2013, CrowdStar retained Kilpatrick Townsend & Stockton LLP as counsel in this litigation against GT.

[5] CrowdStar does not seek fees incurred related to GT's misjoinder because it occurred in the original, dismissed case. These facts are provided to reveal the full story of GT's litigation misconduct.

principal place of business are in the Northern District of California not the Southern District. *See id.*

Moreover, even when the Court started granting Defendants' motions to transfer one-after-another, GT refused to reconsider its position. For example, GT argued that each Defendant delayed filing its motion to transfer for almost a year. The Court rejected that argument (repeatedly) because (1) GT improperly used the original filing date of the misjoined case, from which Defendants were dismissed and (2) GT is a non-practicing entity and thus would not lose sales during the pendency of the actions. *See, e.g.*, *CrowdStar International Limited et al.*, No. 12-2931, at *6 (S.D. Cal. July 25, 2013) (Dkt No. 32); *Gametek LLC v. Zynga Inc.*, No. 12-2933, at *6-7 (S.D. Cal. June 3, 2013) (Dkt No. 42-1); *Gametek LLC v. Funzio, Inc.*, No. 12-2928, at *6 (S.D. Cal. June 28, 2013) (Dkt No. 42); *Gametek LLC v. Electronic Arts*, No. 12-2927, at *6 (S.D. Cal. July 23, 2013) (Dkt No. 59).

GT also argued venue was proper because all of its documents are in the Central District and the majority of documents from both sides would be exchanged electronically. Again, the Court repeatedly rejected that argument because (1) GT filed its suit in the Southern District and not the Central District, (2) GT is a non-practicing entity and is unlikely to have a large number of documents to produce, (3) the center of gravity of the dispute is where the Defendant is located, and (4) e-documents meant GT also would have no additional burden if the case were transferred. *See, e.g.*, *Gametek LLC v. Gameview Studios, LLC,* No. 12-499, at *4 (S.D. Cal. Dec. 4, 2012) (Dkt No. 47); *Gametek LLC v. RockYou, Inc.*, No. 12-2936, at *4-5 (S.D. Cal. Mar. 12, 2013) (Dkt No. 26-1); *Gametek LLC v. Zynga Inc.*, No. 12-2933, *5-6 (S.D. Cal. June 3, 2013) (Dkt No. 42-1); *Gametek LLC v. Funzio, Inc.*, No. 12-2928, *5 (S.D. Cal. June 28, 2013) (Dkt No. 42); *Gametek LLC v. Electronic Arts*, No. 12-2927, *5-6 (S.D. Cal. July 23, 2013) (Dkt No. 59); *Gametek LLC v. CrowdStar International Limited*, No. 12-2931, *5-6 (S.D. Cal. July 25, 2013) (Dkt No. 32).

In short, by the second time—and certainly by the seventh time—the Court rejected GT's arguments, GT knew its arguments were losers but pressed on in any event, thereby needlessly increasing the attorneys' fees and costs to Defendants and the burden on the Court.

> **3)** **In almost 50 different instances, GT threatens motions to compel and sanctions for alleged discovery violations despite the lack of any discovery deadline**

GT's actions required CrowdStar, among other Defendants, to incur costs and attorneys' fees in defending against unreasonable discovery demands. Those costs and attorneys' fees should be reimbursed by GT.

Over the course of the litigation, GT threatened a motion to compel in at least twenty-five emails and with respect to at least twelve different discovery categories. *See* Email (Nov. 14, 2012 1:00 p.m. PT) (Exhibit 13); Email (Nov. 15, 2012 7:58 a.m. PT) (Exhibit 14); Email (Nov. 23, 2012 10:20 a.m. PT) (Exhibit 15); Email (Nov. 27, 2012 3:07 p.m. PT) (Exhibit 16); Email (Feb. 15, 2013, 3:38 p.m. PT) (Exhibit 17); Email (Feb. 18, 2013, 11:31 p.m. PT) (Exhibit 18); Email (Feb. 20, 2013, 10:00 a.m. PT) (Exhibit 19); Email (Apr. 10, 2013, 5:30 p.m. PT) (Exhibit 20); Email (Apr. 10, 2013, 8:51 p.m. PT) (Exhibit 21); Email (May 21, 2013 11:00 a.m. PT) (Exhibit 22); Email (May 29, 2013, 7:24 p.m. PT) (Exhibit 23); Email (May 31, 2013 2:16 p.m. PT) (Exhibit 24); Email (July 1, 2013 3:15 p.m. PT) (Exhibit 25); Email (Aug. 3, 2013 8:22 a.m. PT) (Exhibit 26); Email (Aug. 5, 2013 7:42 a.m. PT) (Exhibit 27); Email (Sep. 19, 2013 11:54 a.m. PT) (Exhibit 28); Email (Sep. 22, 2013 8:20 p.m. PT) (Exhibit 29); Email (Sep. 24, 2013 7:38 p.m. PT) (Exhibit 30); Email (Oct. 18, 2013 3:02 p.m. PT) (Exhibit 31); Email (Oct. 30, 2013 4:17 p.m. PT) (Exhibit 32); Email (Nov. 5, 2013 1:37 p.m. PT) (Exhibit 33); Email (Nov. 13, 2013 8:36 p.m. PT) (Exhibit 34); Email (Mar. 22, 2014 3:57 p.m. PT) (Exhibit 35); Email (Mar. 26, 2014 11:03 a.m. PT) (Exhibit 36); Email (Apr. 11, 2014 5:29 p.m. PT) (Exhibit 37).[6]

GT began its unreasonable discovery demands by serving a convoluted list of 75 30(b)(6) deposition topics. *See* Plaintiff's Rule 30(b)(6) Notice to CrowdStar (Exhibit 38). In a letter from GT's counsel to CrowdStar's counsel dated April 16, 2014, GT threatened to seek sanctions against CrowdStar even after the motion for judgment on the pleading had been filed and the hearing was fast

---

[6] CrowdStar's motion includes references to GT's litigation misconduct against EA, Funzio, and Zynga. Similarly, EA's, Funzio's, and Zynga's motions include references to GT's litigation misconduct against CrowdStar. This is to provide the Court with the full picture of GT's patent assertion behavior across an industry as well as because the documents supporting the attorneys' fees overlap due to the joint defense group splitting costs.

approaching. Letter from GT's counsel to CrowdStar's counsel (April 16, 2014) (Exhibit 39).[7] Even more egregious, GT's counsel alleged that CrowdStar failed to produce 37 categories of documents, many of which were not in their 16 Requests for Production. *See* Plaintiff's First Interrogatories and Requests for Production to CrowdStar (Exhibit 40). In addition, some of the information requested in the April 16th letter had already been produced by CrowdStar. Specifically, CrowdStar had already produced all requested financial information and made the source code for the accused games available for inspection. Steven Moore Declaration, at 4. However, GT made no effort to arrange an inspection of the source code for the accused games. Even after GT demanded that numerous depositions occur as quickly as possible (and scoffed at CrowdStar for scheduling these depositions after the potentially dispositive hearing on April 23rd rather than before) they still made no request to secure a time to review the source code prior to the deposition dates. *Id*.

Furthermore, despite having CrowdStar's financial information showing the relative success of each accused product, GT refused to prioritize the accused products or drop any from the case, even though it could never litigate to trial that many products. Another clear indication of GT's strategy is that it pushed to have depositions as soon as possible (which we scheduled for early May) but did not identify the "missing" documents until April 16th. Instead of suggesting that the depositions be postponed while the purported document issues were addressed, GT suggested that it would just re-take the depositions at a later date should CrowdStar produce additional documents. There is no explanation for this "rush" other than to run up defense costs considering that no fact discovery end was in sight.

## VII. CONCLUSION

For the foregoing reasons, and based on the totality of the circumstances, CrowdStar respectfully requests that the Court exercise its discretion to find this case "exceptional" and award CrowdStar's attorney fees of $484,326.92 in accordance with § 285. Without such a ruling, GT

---

[7] This letter was sent at the request of CrowdStar's counsel during a meet and confer. Due to vague allegations of a deficient document production, counsel for CrowdStar requested that GT identify what documents it believed were missing.

(Acacia) will profit from its unreasonable litigation conduct in this case and will be incentivized to continue its (winning) formula in future litigation campaigns.

DATED: June 30, 2014          Respectfully submitted,

                                Steven D. Moore
                                Wab P. Kadaba
                                Vanessa M. Blake
                                Rodney R. Miller
                                KILPATRICK, TOWNSEND & STOCKTON LLP

                                By:     /s/ Steven D. Moore

                                Attorneys for CrowdStar

US2008 5759912 1